PETERSON, Chief Judge.
Seabird Properties, Inc. (Seabird), appeals an order enforcing a settlement agreement. We vacate the order.
Seabird is a developer of a condominium. Villages of Seaport Condominium, Inc. (Villages) is the association for the condominium and the Resolution Trust Corporation (RTC) is the receiver for a savings and loan association which had originally financed Seabird’s project. All three of them entered into a settlement agreement concerning a dispute over Seabird’s alleged construction defects. Among other things the agreement provided: “If the conditions precedent as set forth in Paragraph three are not complied with within 90 days of the execution of this agreement by all parties, any party to this agreement may cancel this agreement upon written notice to all other parties.” Paragraph three included the condition precedent that 100% of all members of Villages must participate in a class action lawsuit. The condition further provided:
d.... However, Seabird and [the RTC] may determine in their sole discretion to accept less than 100 % participation in the class action. In the event Seabird and [the RTC] do determine to waive this condition precedent, even though one or more members of the class have opted out of the class action, this agreement shall be fully enforceable and binding on all parties hereto and all members of the plaintiffs participating in the second lawsuit.
(Emphasis added). Unfortunately, one of the Villages’ members opted out of the class action. On April 27, 1995, the attorney for Seabird and RTC wrote a letter to the attorney for Villages in which he noted that there were only two remaining steps to be taken in the pending lawsuit: first, an order approving the settlement finding it to be binding on class members, and second, the consummation of the settlement agreement itself — specifically, the delivery of settlement funds and quit claim deeds from Seabird. In the letter the attorney then asked the attorney for Villages to “go ahead and take whatever action is necessary to have the ... order entered by the court.” The letter closed with the following:
Under the settlement agreement Seabird Properties, Inc., and the Resolution Trust Corporation as receiver for PIMA Federal Savings and Loan Association, have the right to void the agreement should there be less than one hundred percent participation in the class action. Although I presume that neither party will wish to avoid the settlement agreement, I do need *854 to confirm that fact. If there are any problems in that regard, I will let you know as soon as possible.
Nothing transpired until October 10, 1995, when the attorney for Seabird and RTC informed the Villages’ attorney that RTC was electing not to consummate the settlement agreement because 100% participation of members had not been secured. The Seabird attorney further stated, “[t]herefore, please consider the agreement to be terminated, null and void.”
Meanwhile, the sole owner who had earlier opted out of the class action sold his unit to another individual. The new owner filed a notice of intent to be included in the class action suit on November 2, 1995. Pursuant to the new owner’s decision to be included, Villages filed a motion with the trial court to enforce the settlement agreement. The trial court, in its order mandating compliance with the settlement agreement, found that Seabird had waived the 100% participation requirement and that, additionally, in any event, the condition precedent had been met because 100% participation had been realized.
In American Somax Ventures v. Touma, 547 So.2d 1266, 1268 (Fla. 4th DCA 1989), the fourth district wrote:
Waiver is commonly defined as the intentional or voluntary relinquishment of a known right and while conduct may imply such a waiver, the conduct relied upon to do so must make out a clear case of waiver. Furthermore, waiver does not arise merely from forbearance for a reasonable time.
(Citations omitted). In the instant ease, Seabird never made a statement that it would accept less than 100% compliance. As noted, Seabird’s counsel, in late April, stated that it would have to check with its client before waiving the unanimous compliance requirement. While it took nearly five months for Seabird to give its response that it was choosing not to waive the 100% requirement, this extended period of time, or “forbearance” by Seabird did not itself create a waiver. The slow response time, if anything, gave Villages time to try to obtain participation by the one holdout or his successor in interest. If Villages had been able to obtain 100% participation before Seabird conveyed to Villages that it would not waive the 100%, Seabird likely could have been said to have voluntarily extended the time period for 100% compliance in the interim. Villages, however, did not file a notice of intent to have the holdout’s successor included as a class member until October 30, 1995, nearly three weeks after Seabird had informed Villages it was voiding the contract. Villages, during Seabird’s five month period of not responding, was on notice that if it did not get 100% compliance, the possibility existed that Seabird would void the agreement.
Villages cites to the case of Pan American Distributing Co. v. Sav-A-Stop, Inc., 124 So.2d 753 (Fla. 1st DCA 1960) for the proposition that “a valid condition may be waived by a promisor, if, after its defective performance, he continues to recognize the existence of the contract, or if he retains its benefits for an unreasonable time after he knows or should have known that the performance was defective.” Id. at 754. In Pan American, the defendant, at least arguably according to the appellate court, “not only retained the benefits of the plaintiffs performance, but recognized the continued existence of its duty by issuing ... credit memorandum for ... records returned to it.” In the instant case, such an on-going contractual relationship did not exist; an agreement with conditions was entered into and the defendant’s counsel indicated to the plaintiff his client may opt to void the agreement if the 100% participation condition was not met. Seabird, by its counsel’s clear indication to Villages that his client might ultimately choose to require 100% compliance, may be said to have potentially extended the deadline to meet the condition, but cannot be said to have waived the condition altogether.
The trial court’s additional finding that 100% compliance did take place is likewise in error because Seabird legally voided its agreement with Villages by informing Villages of its decision to enforce the contractual condition before Villages informed it that it had satisfied that condition. Because the trial court erred in finding waiver and 100% compliance, it is unnecessary to decide Sea *855 bird’s additional issue of whether the trial court had the legal authority to impose an injunction against the RTC.
ORDER VACATED.
ANTOON, J., concurs.
GOSHORN, J., dissents with opinion.